GÓMEZ, DEMANDANTE Y APELADO, *v.* TORO, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª., en causa sobre cobro de dinero (moción de traslado).

No. 1390.—Resuelto en marzo 29, 1916.

TRASLADO DE PLEITOS—LUGAR PARA LA CELEBRACIÓN DEL JUICIO—ORIGEN DE LOS ARTÍCULOS 76 Y 77 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL—LEY DE ENJUICIAMIENTO CIVIL ANTIGUA.—El origen de los artículos 76 y 77 del Código de Enjuiciamiento Civil es distinto al de la casi totalidad del código. Dichos preceptos legales se inspiran en los artículos 56, 57 y 58 de la antigua Ley de Enjuiciamiento Civil.

ID.—SUMISIÓN DE LAS PARTES—JURISDICCIÓN.—El artículo 77 del Código de Enjuiciamiento Civil vigente, comprende en su número 1°. la sumisión expresa a que se refería el artículo 57 de la ley antigua, y en los 2 y 3 la tácita de que trata el artículo 58 de la misma ley; y dada la forma en que está redactado dicho artículo, para que se entienda hecha la sumisión expresa, basta

que en el convenio escrito de las partes se sometan éstas a determinada corte que tenga jurisdicción de acuerdo con la ley sobre la materia a que se refiera el convenio.

ID.—JURISDICCIÓN—PACTOS LÍCITOS—HONESTIDAD—BUENAS COSTUMBRES—POLÍTICA PÚBLICA.—La sumisión previa de las partes a la jurisdicción de una corte competente, es un pacto lícito, y una vez que se hace en legal forma, obliga a la persona que se somete y aun a sus herederos, no siendo contrario a la honestidad ni a las buenas costumbres ni a la política pública.

ID.—SUMISIÓN DE LAS PARTES—DISTINCIÓN ENTRE LA JURISPRUDENCIA AMERICANA Y LA ESPAÑOLA.—La única diferencia que existe entre la jurisprudencia americana y la española sobre la materia de sumisión, consiste en que según la primera es necesario que se inicie el pleito para que pueda la parte someterse y según la segunda tal sumisión puede acordarse al celebrarse el contrato que pueda dar origen al pleito. El principio de la sumisión voluntaria se reconoce en ambas jurisprudencias.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Arturo Aponte, Jr.*

Abogados del apelado: *Sres. Bosch & Soto.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación contra una orden de la Corte de Distrito de San Juan, Sección 2ª., negando el traslado de cierto pleito.

La demanda versa sobre cobro de pesos y se funda en un pagaré que se transcribe en ella y que copiado a la letra dice así:

"Por $2,500 U. S. Cy.   Valor a 20 de noviembre de 1914. Pagaré a Don Manuel Gómez López en el local de su establecimiento en San Juan, o a su orden, el veinte de noviembre de mil novecientos catorce la suma de dos mil quinientos dollars valor recibido.   Dicha suma devengará interés a razón de_____anual, desde el día_____ hasta el día de su pago.   Sometiéndome expresamente a la competencia de los tribunales insulares de San Juan y a satisfacer las costas y gastos que el cobro de aquella suma ocasione incluso los honorarios del abogado de que nos valgamos en su reclamación.   San Juan, P. R. 20 de mayo de 1914.   José Toro Ríos."

Emplazado el demandado en la ciudad de Humacao, archivó dentro de término un escrito de excepción previa alegando como único fundamento de la misma que la demanda "es dudosa (*uncertain*) en lo que respecta al pago de inte-

reses a razón del 6 por ciento desde el 20 de noviembre, 1914, en atención a que del texto del documento transcrito en dicha demanda, no aparece semejante obligación, siendo dudosa en tal sentido la alegación de referencia.'' Y también archivó el demandado el mismo día en que presentó la excepción, una moción solicitando el traslado del pleito al lugar de su domicilio por tratarse de una acción personal.

La corte negó el traslado y su resolución se fundó sin duda en los artículos 76 y 77 del Código de Enjuiciamiento Civil artículos que, según dijimos en *Hernaiz, Targa & Co.* v. *Vivas,* 20 D. P. R. 106–114, son de origen distinto a la totalidad del código. Dichos preceptos legales se inspiran en los artículos 56, 57 y 58 de la antigua Ley de Enjuiciamiento Civil de Puerto Rico. Para mayor claridad y a fin de interpretarlos rectamente, compararemos los indicados preceptos de ley, nos referiremos luego a la jurisprudencia relativa a los últimos y fijaremos entonces el alcance y los efectos de los primeros.

Las disposiciones invocadas del Código de Enjuiciamiento Civil vigente en esta isla, son así:

''Art. 76.—Con arreglo a su jurisdicción, una corte conocerá de los pleitos a que dé origen el ejercicio de las acciones de todas clases, cuando las partes hubieren convenido en someter dicho pleito a la decisión de tal corte.

''Art. 77.—Se entenderá hecha la sumisión:

''1. Por convenio escrito de las partes.

''2. Por el demandante en el mero hecho de acudir a la corte interponiendo la demanda.

''3. Por el demandado en el hecho de hacer, después de personado en el juicio, cualquiera gestión que no sea la de pedir que el juicio se celebre en la corte correspondiente.''

Y las de la antigua Ley de Enjuiciamiento Civil son como siguen:

Art. 56.—Será juez competente para conocer de los pleitos a que dé origen el ejercicio de las acciones de toda clase, aquel a quien los litigantes se hubieren sometido expresa o tácitamente.

"Esta sumisión sólo podrá hacerse a juez que ejerza jurisdicción ordinaria y que la tenga para conocer de la misma clase de negocios y en el mismo grado.

"Art. 57.—Se entenderá por sumisión expresa la hecha por los interesados renunciando clara y terminantemente a su fuero propio, y designando con toda precisión el juez a quien se sometieren.

"Art. 58.—Se entenderá hecha la sumisión tácita:

"1º. Por el demandante en el mero hecho de acudir al juez interponiendo la demanda.

"2º. Por el demandado en el hecho de hacer, después de personado en el juicio, cualquiera gestión que no sea la de proponer en forma la declinatoria."

Como puede verse sin dificultad, el artículo 76 del nuevo códico, equivale al 56 de la ley antigua. El párrafo final del último se condensa en estas palabras: "con arreglo a su jurisdicción" del primero, y en vez de las palabras "expresa o tácitamente" del primer párrafo del 56, se habla en el 76 de la sumisión en general.

El artículo 77 del nuevo código comprende todos los casos de los artículos 57 y 58 de la antigua ley. Pero siguiendo el legislador español la pauta marcada en el artículo 56, define en los artículos 57 y 58 los casos de sumisión expresa y sumisión tácita, mientras que el legislador puertorriqueño, lógico con la fórmula adoptada en el artículo 76, abarca en el artículo 77 todos los casos de sumisión en general, aunque puede concluirse perfectamente que el número 1 del artículo 77 comprende la verdadera sumisión expresa, y los Nos. 2 y 3 del mismo, la tácita, con la única diferencia de que según el código moderno basta que se convenga la sumisión por escrito para que exista y según la ley antigua era necesario que se renunciara el fuero propio y se designara el juez a que se sometieren las partes. El código moderno preserva el principio del antiguo, pero lo encierra en una fórmula más sencilla. Es ciertamente innecesaria la renuncia expresa del fuero, porque la expresa sumisión de las partes envuelve claramente tal renuncia.

Veamos ahora cómo fueron interpretados los preceptos de la ley antigua. Comentándolos, Manresa dice:

"*La sumisión puede ser expresa o tácita:* será *expresa,* cuando los interesados renuncien *clara y terminantemente* al fuero propio, designando *con toda precisión* el juez a quien se someten; y *tácita,* cuando por los actos o gestiones que practiquen ante un juez incompetente, den a entender que se someten a su jurisdicción.

"Para que la sumisión se tenga por *expresa* y produzca sus efectos, es necesario que no quede la menor duda de la intención y voluntad de los interesados, no sólo en cuanto a la renuncia del fuero propio, sino respecto del juez a quien quieren someterse: cualquiera de las dos circunstancias que falte, no podrá tener efecto la sumisión, porque la ley exige las dos conjuntamente en su artículo 57, de acuerdo también con el 3º. y 304 respectivamente de las dos leyes antes citadas. No bastarán conjeturas; no bastará una renuncia general y de fórmula o de rutina, como las que suelen ponerse en algunas escrituras: es necesario que la renuncia del propio fuero sea clara y terminante, y lo mismo la designación del juez a quien se someten * * *.

"Lo conveniente y más conforme es que las partes, en el documento que otorguen al efecto, después de hacer relación del negocio, digan clara y terminantemente que renuncian su propio fuero, y que para la decisión del pleito o pleitos que puedan originarse de aquel asunto, o a que pueda dar lugar el cumplimiento del contrato a que se refieran, se someten al juez de primera instancia de tal parte. Si en aquella localidad hubiere dos o más jueces, la sumisión no podrá ser a uno determinado, sino a cualquiera de ellos, conforme al artículo 59, que después explicaremos." 1, Manresa, Ley de Enjuiciamiento Civil, 163.

Y el Tribunal Supremo de España, en sus sentencias de 11 de julio de 1858, 5 de abril de 1861, 6 de junio de 1872, y 9 de enero de 1873, decidió que la renuncia del fuero es un pacto lícito y permitido y que cuando en un contrato los otorgantes lo renuncian y se someten expresamente a la jurisdicción de un lugar determinado, el juez de ese lugar es el competente en todo tiempo para conocer del negocio.

Como puede verse, tanto de la jurisprudencia del Tribunal Supremo de España, cuanto de la opinión del más autorizado de los comentaristas de la Ley de Enjuiciamiento Civil,

es necesario que se cumplan dos requisitos para que se entienda hecha totalmente la sumisión, a saber: la renuncia del fuero, y la designación del juez al cual las partes contratantes se someten.

Ahora bien, dada la forma en que está redactada la ley de Puerto Rico, ¿es necesario que se expresen los dos requisitos a que se refieren Manresa y el Tribunal Supremo de España? Del estudio comparativo que dejamos hecho, claramente se infiere que no. Basta en la actualidad en Puerto Rico que en el convenio escrito de las partes se sometan éstas a determinada corte que tenga jurisdicción de acuerdo con la ley sobre la materia a que se refiere el convenio. Y como así se hizo en el presente caso, es necesario concluir que la Corte de Distrito de San Juan, Sección 2ª., actuó correctamente al negarse a decretar el traslado del pleito solicitado por el demandado, y, por tanto, que su resolución debe confirmarse por esta Corte Suprema.

Sería innecesario que prolongáramos nuestro estudio a no haberse invocado para sostener la procedencia del traslado del pleito al lugar del domicilio del demandado, la jurisprudencia americana establecida en los casos de *Hall* v. *People's Mutual Fire Ins. Co.*, 6 Gray, 185, y *Insurance Co.* v. *Morse*, 87 U. S. 445.

Hemos estudiado las decisiones citadas y creemos que no son aplicables. El legislador portorriqueño quiso preservar y preservó en el nuevo Código de Enjuiciamiento Civil el principio del antiguo sobre sumisión previa de las partes. Dicho precepto es claro y fué repetidamente interpretado, como hemos visto, en el sentido de que la sumisión previa es un pacto lícito y una vez que se hace en legal forma obliga a la persona que se somete y aun a sus herederos. Tal interpretación era perfectamente entendida y practicada en Puerto Rico y no es contraria a la honestidad, ni a las buenas costumbres, ni a la política pública. Al parecer la única diferencia que existe entre la jurisprudencia americana y la española consiste en que según la primera es necesario que se

inicie el pleito para que pueda la parte someterse, y según la segunda, tal sumisión puede acordarse al celebrarse el contrato que pueda dar origen al pleito. El principio de la sumisión voluntaria, que es lo esencial a nuestro juicio, se reconoce, pues, por ambas jurisprudencias. De ahí que sin dificultad alguna, no obstante ser nuestro Código de Enjuiciamiento Civil actual casi en su totalidad de origen americano, puedan subsistir sus artículos 76 y 77 con su interpretación antigua. No se viola con ello ningún derecho fundamental reconocido por las leyes existentes, y se cumple la intención de la legislatura que fué sin duda la de preservar una forma contractual bien entendida y practicada por muchos años en esta isla.

El caso hipotético de que una persona se vea obligada tal vez por virtud de un documento falso en donde conste su sumisión, a defenderse fuera del lugar de su domicilio, no está ante nosotros. En el caso que estamos considerando y resolviendo el demandado implícitamente aceptó la autenticidad del documento en que consta su sumisión, al limitarse a consignar en su excepción previa que era dudosa la forma en que se cobraban los intereses.

Tampoco está envuelta aquí cuestión alguna entre tribunales insulares y federales. Se trata de dos cortes organizadas por la misma legislatura que, de acuerdo con la ley, tienen igual jurisdicción dentro de sus respectivos territorios.

Debe confirmarse la orden recurrida.

*Confirmada la orden apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

La sentencia de la corte en esté caso se funda, a mi entender, en la teoría de que los artículos 76 y 77 de nuestro Código

de Enjuiciamiento Civil, para los efectos de este caso, son una reproducción de disposiciones idénticas contenidas en la Ley de Enjuiciamiento Civil de España, y por consiguiente debe presumirse que fueron adoptados con la misma interpretación dada a esas disposiciones por los tribunales y comentaristas españoles.

Es bien sabido que el Código de Enjuiciamiento Civil en su totalidad fué tomado de Idaho, y, consiguientemente, yo creo que las palabras generalmente usadas en dicho código deben ser interpretadas en la forma en que lo han sido siempre por las cortes americanas. *El Pueblo* v. *Rosaly,* 227 U. S. 270; *Schick* v. *United States,* 195 U. S. 65. El sistema de litigios y la jurisdicción de las cortes son considerablemente distintos, y fué claramente la intención de la Legislatura de Puerto Rico dar a la isla un sistema de enjuiciamiento civil americano. Según se indica en la opinión, hubo pequeñas omisiones al hacerse la adopción de las antiguas disposiciones de la ley española, pero yo creo que el artículo 76 por sí presupone que un pleito ha sido presentado. Es mi parecer que antes de que pueda haber sumisión debe existir un pleito, o, cuando menos, una causa de acción; y no hay causa de acción sobre un pagaré hasta que no existe incumplimiento de alguna clase. Decir que puede haber una sumisión previa de un pleito o causa de acción que aún no tiene existencia, es manifestar una contradicción de términos.

La opinión de la mayoría admite el hecho de que un convenio del carácter del de que se trata, no podría ser sostenido en los Estados Unidos. La resolución de la Corte Suprema de los Estados Unidos en el caso *Insurance Co.* v. *Morse,* 87 U. S. 445, es clara en cuanto a ese punto, y el razonamiento de la corte no se limita en modo alguno al derecho de trasladar un caso de una corte de estado a una corte insular cuando expresa que una parte no renuncia a tal derecho por medio de un contrato anterior al efecto.

Las resoluciones de la Corte Suprema de Massachusetts

en los casos de *Hall* v. *Mutual Fire Ins. Co.,* 6 Gray, 185, y *Nute* v. *Hamilton Ins. Co.,* 6 Gray, 174, son aplicables, y dichos casos gobiernan en cuanto al principio. El Juez Presidente Sr. Shaw manifiesta que una estipulación en un contrato de esa clase es meramente un convenio condicional cuyo cumplimiento no puede ser específicamente obligado. Los casos a que he hecho referencia aparecen citados en una nota en la obra *Brown on Jurisdiction,* segunda edición, página 29, al efecto de que un convenio para someterse a arbitraje o a determinada jurisdicción, es ineficaz para obligar a un demandado.

Para los fines de la argumentación podría admitirse que la Legislatura, puede pasar una ley por la cual un demandado estuviera obligado a tramitar su caso en una corte a la cual él había convenido someterse en caso de litigio, pero me parece que el legislador de que se trata, si deseó hacerlo así en este caso, no ha hecho uso de las palabras apropiadas. El artículo 81 del Código de Enjuiciamiento Civil dispone que casos de esta naturaleza deben verse en el distrito en que residiere el demandado al iniciarse el litigio. Para hacer desaparecer ese derecho el demandado debe someterse a alguna otra corte, y no creo que en parte alguna del Título V del Código de Enjuiciamiento Civil haya indicación de que la Legislatura quiso que la palabra "sumisión" se entendiera un convenio de sumisión hecho antes de suscitarse la controversia; en otras palabras, que cuando la Legislatura adopta un código americano hay la presunción de que la política pública en cuanto al mismo es la americana, y que esta presunción no queda destruída al reproducir párrafos aislados e incompletos de códigos anteriormente vigentes, aun cuando se admitiera que las palabras del código español son susceptibles de la interpretación que se les ha dado.